**In re STATE OF MISSOURI; State of Missouri ex rel John G. Runyan, as Director of the Missouri Department of Agriculture; State of Missouri ex rel Missouri Department of Agriculture; John G. Runyan, as Receiver of Certain Grain Warehouses; and State of Missouri ex rel John Ashcroft, Attorney General of the State of Missouri, Petitioners.**

**Bankruptcy No. J–C–80–244.**

United States District Court,
E. D. Arkansas,
Jonesboro Division.

Dec. 2, 1980.

---

John Ashcroft, Atty. Gen., Gerald M. Sill, Asst. Atty. Gen., Jefferson City, Mo., James F. Gunn, Gunn & Gunn, St. Louis, Mo., Richard Lieb, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Shults & Ray by H. Baker Kurrus, Little Rock, Ark., for petitioners.

Warren Dupwe, Jonesboro, Ark., A. Jan Thomas, Jr., West Memphis, Ark., Davidson, Plastiras, Horne, Hollingsworth & Arnold, Ltd., Little Rock, Ark., for Robert P. Lindsey.

Seay & Bristow, Jonesboro, Ark., for Arkansas farmers.

## OPINION AND ORDER

HOWARD, District Judge.

This proceeding is upon a Petition for Writ of Prohibition by the State of Missouri; State of Missouri Ex Rel John G. Runyan, as Director of the Missouri Department of Agriculture; State of Missouri Ex Rel Missouri Department of Agriculture; John G. Runyan, as Receiver of certain grain warehouses; and State of Missouri Ex Rel John Ashcroft, Attorney General of the State of Missouri (hereafter referred to as Petitioners), to be directed to the Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, and the Honorable Charles Baker, Bankruptcy Judge.

The central issue is whether the Bankruptcy Court has jurisdiction of grain stored in public warehouses owned by Robert W. James and George E. James, Jr., doing business in various partnerships as: Cox Cotton Company, James Grain and Cotton Company, Frisbee Cotton Company, James Grain and Elevator Company and James Gin and Elevator Company (hereafter referred to as debtors), pursuant to a Chapter 11 proceeding instituted by debtors under the Bankruptcy Reform Act of 1978, where petitioners claim the right to possession of the grain, under the police and regulatory power of the State of Missouri, in the interest of purported depositors and holders of warehouse receipts.[1]

Another related issue is whether the Bankruptcy Court should be precluded from proceeding with contempt proceedings against petitioners for the alleged violation of orders of the Bankruptcy Court.

Because of the interest this proceeding has generated, the Court deems it advisable to narrate the relevant events culminating in this proceeding.[2]

On August 8, 1980, the debtors executed the following instrument:

"TO: Director, Missouri Department of Agriculture

and

Director's Designated Representative in the enforcement of the Missouri Grain Warehouse Law, Chapter 411, RSMo.

Due to circumstances which have adversely affected the financial position of our businesses licensed with the Missouri Department of Agriculture in accordance with the Missouri Grain Warehouse Law, Chapter 411, RSMo, we hereby grant authority to the Missouri Department of Agriculture to take control of all grain contained in the following facilities:

| Missouri License No. | UGSA No. | Licensed Legal Entity | Location of Facilities |
|---|---|---|---|
| P–UR–98 | 8–8650 | Donald R., Robert W., and George James d/b/a Frisbee Cotton Company | Holcomb, MO |
| P–UR–431 | 8–8598 | Donald R., Robert W., and George James d/b/a Frisbee Cotton Company | New Madrid, MO (Ristine) |
| P–UR–430 | 8–8600 | Donald R., Robert W., and George James d/b/a Frisbee Cotton Company | Caruthersville, MO |
| P–UR–108 | 8–8573 | Donald R. James, Robert W. James, and George E. James d/b/a James Gin & Elevator Company | Naylor, MO |

This authority is granted for the purpose of insuring that all grain is fairly and equitably disbursed, either in full or in pro-rata to the rightful owner(s) and/or depositor(s) thereof...." [3]

1. The Court permitted Robert P. Lindsey, Trustee of debtors' estate, hereafter referred to as Trustee, to intervene as respondent since the Trustee filed pleadings in opposition to the Petition for Writ of Prohibition and claims the grain as an asset of the estate.

The Court also permitted forty-five (45) Arkansas farmers to intervene as respondents inasmuch as they claim a substantial portion of the grain and participated, without objection, in the oral argument afforded petitioners.

2. The Court has received amici curiae briefs from the Attorneys General of Texas and Iowa.

3. Section 411.519(1)(2) and (6) of Title 26 of Missouri's Grain Warehouse Law provides:

"1. Whenever it appears to the satisfaction of the director that licensed warehouse-

On August 11, 1980, debtors filed voluntary petitions in the United States Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, for liquidation, pursuant to Chapter 7 of the Bankruptcy Code.[4]

The Director of the Missouri Department of Agriculture, John G. Runyan, on August 12, 1980, petitioned the Circuit Courts of New Madrid, Dunklin, Pemiscot, Ripley and Butler Counties, Missouri—the locations of four of debtors' warehouses—for appointment as receiver of the warehouses.

The orders of the Missouri Circuit Courts, in addition to appointing the Director receiver, authorized the Director to conduct an audit of the financial affairs of the debtors and carry out such operational liquidation of grain warehouses in a manner that would promote and protect the interest of the depositors of grain.

Robert P. Lindsey was appointed Interim Trustee by the Bankruptcy Court, on August 15, 1980, for the purpose of operating the businesses of the debtors. On August 29, 1980, the Bankruptcy Court entered its order authorizing the Trustee to assume certain executory contracts of the debtors, as modified, with the three grain producers.

On September 3, 1980, Petitioners filed in the Bankruptcy Court an "Application for Determination of Ownership of Customer-owned Assets [the grain in question], for Liquidation . . . and Distribution of the Proceeds." However, on September 22, 1980, the date the Bankruptcy Court scheduled a hearing on Petitioners' application, Petitioners voluntarily served notice of dismissal of their request for determination of ownership of the grain.

On September 11, 1980, the Bankruptcy Court entered an order approving the Interim Trustee's Application for Approval of Grain Dealer and Warehouse Operator's Licenses and Establishing Trustee's Bond at $1,000,000; and further directing the Trustee to "comply, to the extent possible," with the laws and regulations of Missouri dealing with the licensing of grain warehouses and grain dealers. The Bankruptcy Court also found that the bond would satisfy the requirements of the States of Missouri and Arkansas regarding the bonding of grain dealers and warehouses "and will be consistent with the Bankruptcy Code and will adequately protect all creditors of the above entities."

The Bankruptcy Court further ordered Petitioners to remove immediately:

"... any locks, chains, or other security devises at or upon any grain elevators or facilities owned and operated by the above captioned debtor entities so that applicant may take possession of said warehouses and facilities, receive grain, and operate the businesses of the debtors

---

man does not have in his inventory sufficient grain to cover the outstanding receipts and scale tickets issued or assumed by him, or when the warehouseman refuses to submit his records or property to lawful examination, the director may give notice to the warehouseman to comply with any of the following requirements:

"(1) Cover the shortage by supplying the grain or evidence of ownership of the grain;

"(2) Give additional bond as required by the director;

"(3) Submit to such examination as the director may deem necessary;

. . . . .

"2. Upon receipt of the director's verified petition setting forth the circumstances of the warehouseman's failure to comply with this chapter and further stating reasons why immediate possession by the director or his authorized agent is necessary for the protection of depositors, warehouse receipt holders or sureties, the court shall forthwith issue an order authorizing the director or his authorized agent to take immediate possession. . . .

. . . . .

"6. If at any time, the director, whether or not he or his authorized agent has possession as authorized by this section, has evidence that a warehouseman is insolvent or is unable to satisfy the claims of all depositors, the director may petition the circuit court for the appointment of a receiver to operate or liquidate the business of the warehouseman in accordance with law."

The value of the grain has been estimated as in excess of $5,000,000.

4. A voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code was also filed by James-Agri Center, Inc. on the same day. James-Agri Center, Inc. is a debtor in possession under the Bankruptcy Code.

consistent with previous orders of this Court."

The Bankruptcy Court on September 15, 1980, found, after conducting a hearing, that a substantial quantity of grain was stored in each of debtors' warehouses in need of preservation and protection from loss, destruction and damage; and that certain persons, farmers-producers, had seized and taken possession of the warehouses for the purpose of preventing the Trustee from fulfilling "certain milo contracts with farmers in Arkansas and Missouri and grain purchasers." The Bankruptcy Court further ordered, effective, however, September 11, 1980, United States Marshals for the Eastern District of Arkansas and the Eastern District of Missouri to:

"... remove and take physical custody and possession of any equipment, personal property, or persons found to be blockading, obstructing, or in any way interfering with the facilities of the debtor entities without the expressed written permission of Trustee, Robert P. Lindsey; that the U.S. Marshals for the above districts be and they further are hereby ORDERED and DIRECTED to assist Trustee in his request to remove any person or property found to be blocking access or entrances to any of the debtor's premises wherever located; and the United States Marshals for each of the above districts be and they are hereby ORDERED and DIRECTED further to arrest and bring before this Court any person found to be blockading, barricading, or in any other manner interfering with Trustee's capacity to operate the debtor's business in each of the above captioned proceedings; and, any such person or persons shall be brought by the United States Marshals for the above districts before this Court at Little Rock, Arkansas, to show cause, if any they have, why they should not be held in contempt of this Court ..."

On September 17, 1980, Petitioners relinquished possession of the warehouses to the United States Marshals and the Trustee.

On September 22, 1980, debtors converted their Chapter 7 liquidation proceedings to reorganization under Chapter 11 of the Bankruptcy Code.[5]

On September 23, 1980, the Trustee filed an adversary proceeding in the Bankruptcy Court for leave to sell all grain free and clear of any lien. A hearing was scheduled by the Court for October 27, 1980. The Trustee also filed fourteen additional adversary proceedings seeking specific performance of grain contracts against producers in Arkansas and Missouri.

The following order was issued by the Circuit Court of New Madrid County, Missouri, on October 20, 1980, at the request of Petitioners:

"ORDERED, that, pursuant to Chapter 411, RSMo, as amended, the Director and his authorized agents are hereby directed to take possession of and seize, by physical means, if required, the five Grain Warehouses as described in the plaintiffs' Petition herein and the grain and records contained therein; and it is further

. . . . .

"ORDERED, that the plaintiffs' motion for a temporary restraining order is granted in all respects by this order; and it is further

"ORDERED, that the defendants[6] show cause before this Court at the courthouse in New Madrid County, Missouri on November 6, 1980, at 10:30 A.M., or as soon thereafter as counsel can be heard (the 'Hearing Date'), WHY an order should not be made herein enjoining and restraining the defendants and each of them, ...

---

5. Subsection (a) of 11 U.S.C. § 706 gives a debtor one absolute right to conversion of a liquidation proceeding to a reorganization case under Chapter 11 of the Bankruptcy Code. (*See*: H.R.Rep.No.95–595, 95th Cong., 1st Sess. 380.)

6. Defendants in the Missouri Circuit Court proceeding are Robert P. Lindsey, Trustee, debtors in the Bankruptcy proceedings and James Agri-Center, Inc., as Debtor in possession in Bankruptcy Case No. J–80–155–B.

"(b) commencing or further prosecuting any proceedings in any court other than this Court, whether or not now pending, involving any or all of the subject matter of this proceeding;

"(c) taking any action or steps in defendant Lindsey's adversary proceeding pending in the bankruptcy court in Arkansas under Nos. J–80–154–B and J–80–155–B as against any of the several hundred individual defendants therein who are depositors of grain or holders of receipts issued by any of the five Missouri Grain Warehouses, and from noting any purported default by any of such defendants therein or from otherwise affecting their ownership of or rights in such grain in any manner;

"(d) moving, transferring or removing any of the grain now contained in any of the five Missouri Grain Warehouses referred to in the Petition herein;"

On October 22, 1980, the Trustee petitioned the Bankruptcy Court for contempt citation, temporary restraining order, preliminary injunction and permanent injunction against Petitioners for the purported violation of the prior order of the Bankruptcy Court; and enjoining them from interfering with the Trustee in the operations of the debtors' businesses. A hearing was scheduled for October 22, 1980, at 9:00 a. m., at the United States Post Office and Courthouse Building, Little Rock, Arkansas.

The following order was issued by the Court of Appeals for the Eighth Circuit:

"Petition for a Writ of Prohibition filed by the State of Missouri ex rel. John G. Runyan, et al. (Petitioners) and directed to the United States Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division and Charles W. Baker a Bankruptcy Judge of that Court, having been considered by the Court, is hereby denied without prejudice to the filing of said petition for a Writ of Prohibition in the United States District Court for the Eastern District of Arkansas on or before Thursday, October 30, 1980.

"The Court further directs a stay of all proceedings in cause Nos. J–80–154–B and J–80–155–B now pending before the Bankruptcy Court until the Writ of Prohibition has been presented to and ruled upon by the United States District Court for the Eastern District of Arkansas." [7]

The thrust of Petitioners' argument for writ of prohibition may be summarized: the Bankruptcy Court does not have subject matter jurisdiction since a substantial portion of the grain in debtors' warehouses is not owned by them. Consequently, the grain is not an asset of the estate and the Bankruptcy Court did not acquire jurisdiction under any provision of the Bankruptcy Code. Petitioners concede that debtors own 2.3% of the grain.

Moreover, Petitioners contend that the State of Missouri has elected to invoke its police and regulatory powers in order to exercise its right to exclusive possession of the grain for the use and benefit of the depositors-owners. Hence, the Bankruptcy Court is powerless to exercise any control over the grain.[8]

## JURISDICTION OF THE BANKRUPTCY COURT

■ Under the Bankruptcy Reform Act of 1978, a debtor's estate is created immedi-

---

7. On November 18, 1980, a stipulation between Petitioners and the Trustee, with approval of this Court and the Court of Appeals, was entered of record modifying the Court of Appeals' Stay to the extent that all issues unrelated to the jurisdiction of the Bankruptcy Court to exercise control over the grain, were eliminated from the effects of the Court of Appeals' Stay.

8. It is clear that the property in question was located on property owned by debtors at the time debtors commenced their Chapter VII proceeding and, consequently, debtors had possession. While debtors sought to deliver possession to Petitioners by executing and delivering a written document to Petitioners, Missouri Grain Warehouse Law does not expressly provide for such a method. Moreover, there is no claim that there is a shortage of grain, or any fraudulent conduct on the part of the debtors in any way, but on the contrary the contention is there is a surplus of grain. Except for insolvency of a grain dealer—the basis under Missouri Law for the appointment of a receiver—insufficiency of inventory appears to be the only other statutory ground authorizing the State to assume possession of grain in the interest of depositors.

ately upon the filing of a petition for relief with the district court clerk. 11 U.S.C. § 541(a). The estate created is composed of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history of the Bankruptcy Code demonstrates that the scope of Section 541 was intended to be extremely broad. *See*: H.R. Rep.No.595, 95th Cong. 1st Sess. 367, U.S. Code Cong. & Admin.News 1978, pp. 5787, 5963 (1977).

Title 28 U.S.C. § 1471(e) provides:

"The bankruptcy court shall have exclusive jurisdiction over all the property of a debtor wherever located of all legal and equitable interests of the debtor in property at the commencement of the case."

■ While the interest of a debtor in property is determined by State law, the question whether such property is property of the debtor's estate is a federal question to be resolved under the Bankruptcy Code. 4 Collier on Bankruptcy, ¶ 541.02 (15 Ed. 1979); *See*: H.R.Rep.No.95–989, 95th Cong., 2d Sess. 367–68 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 82–84 (1978) U.S. Code Cong. & Admin.News 1978, pp. 5787; 11 U.S.C. § 541; Rule 701 of the Bankruptcy Rules.

The Senate Report, commenting on the broad jurisdiction given Bankruptcy Courts over the debtor and all of his property, including property in dispute, states:

"... This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise *in personam* jurisdiction as well as *in rem* jurisdiction in order that they may handle everything that arises in a bankruptcy case."

S.Rep.No.95–989 to accompany S. 2266, 95th Cong., 2d Sess. 153 (1978); 11 U.S.C. § 105.

Rule 701 which has been characterized as the most important of a number of special rules regulating the disposition of disputes provides:

"The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding."

■ It seems clear, at the very least, the Bankruptcy Court has jurisdiction to resolve the competing claims to the property in question by scrutinizing the respective legal and equitable interests and decide whether the debtors' interest is such that it is property of the estate within the meaning of Section 541 of the Code.

The Court is persuaded that the Bankruptcy Reform Act of 1978 was designed to empower Bankruptcy Courts to touch all those aspects of a debtor's affairs that bear on his finances. This conclusion is inescapable in light of Title 28 U.S.C. § 1481 which grants Bankruptcy Courts powers of a "court of equity, law and admiralty" and Title 11 U.S.C. § 105 which authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code.

Petitioners' effort to interpose the police and regulatory powers of the State of Missouri in order to buttress their claim of exclusive possession over the grain and defeat the jurisdiction of the Bankruptcy Court, while, seemingly, made in the utmost

of good faith, must be rejected by this Court for the following reasons:

## A. NOT AN EXERCISE OF POLICE OR REGULATORY POWERS

■ The Court of persuaded that the actions of Petitioners in asserting the claim of possession of the grain, in the alleged interest of depositors, and instituting legal proceedings in the Missouri courts, in an effort to solidify and strengthen their posture, are not an exercise of the police and regulatory powers of Missouri that would otherwise place Petitioners' activities within the exception to the scope of the Bankruptcy Court's jurisdiction under Title 11 U.S.C. § 362(b)(4).[9]

It is plain Petitioners are not endeavoring to prevent a violation of consumer protection, environmental protection, fraud or a similar police or regulatory law involving the safety, health, morals and the general welfare of society, but on the contrary, Petitioners' sole objective is to protect the pecuniary interests in property of purported depositors. Consequently, Petitioners' action does not fall within the exception to the jurisdiction of the Bankruptcy Court where a governmental unit is enforcing a police or regulatory power. *See*: 95 Cong. Rec.H. 11092 (September 28, 1978).

The United States Supreme Court in *Lawton v. Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894), in discussing the extent and limits of a state's police power, made the following observation:

"... It is universally conceded to include everything essential to the public safety, health and morals, and to justify the destruction or abatement ... of whatever may be regarded as a public nuisance ..."[10]

## B. WAIVER OF SOVEREIGN IMMUNITY

■ Petitioners, on September 3, 1980, petitioned the Bankruptcy Court to determine ownership of the grain, and for an order of the Court permitting liquidation and distribution of the proceeds. Nineteen days later, and on the date the Bankruptcy Court scheduled a hearing on Petitioners' request, Petitioners served notice of dismissal of their application for affirmative relief.

Petitioners also petitioned the Bankruptcy Court for an order modifying the Trustee's bond which they stipulated should be set at $1,000,000.

The Court is persuaded that the Bankruptcy Court's jurisdiction, unlike the jurisdiction of other tribunals, can be waived as a substantive matter. Rule 915 of the Bankruptcy Rules provides that a party consents to jurisdiction of an adversary proceeding if he does not promptly make objection in a timely answer or motion.

It is plain that a state is not immunized from the provisions of the Bankruptcy Code. 11 U.S.C. § 542 provides for the turnover of property by an "entity." An

9. 11 U.S.C. § 362(b)(4) provides:
"The filing of a petition ... does not operate as a stay—

(4) ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;"

10. The following are examples which have been regarded as a reasonable exercise of the police power: *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (New York City's Landmark Commission can designate the Grand Central Terminal an historic landmark and thereafter prohibit the construction of a multi-story tower above it; *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (municipality can prohibit sand and gravel operations beneath the water table within its borders); *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960) (city can regulate air pollution emanating from federally licensed vessels); *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (state entomologist can order the cutting of red cedar trees to protect apple orchards from cedar rust disease); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (municipality can ban brickyards within its boundaries); *Lawton v. Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (state official can destroy fish nets to enforce a New York fish and game statute).

entity includes, by definition, any "person, estate, trust, governmental unit." 11 U.S.C. 101(14). And governmental unit means" . . . State . . . or instrumentality of . . . a State." 11 U.S.C. § 101(21).

Petitioners invoked the jurisdiction of the Bankruptcy Court by filing a written pleading seeking affirmative relief; they were not obligated to follow this course of action, but did so in an attempt to benefit themselves. In so doing, Petitioners waived any arguable sovereign immunity.[11] *See: In Re Crisp,* 521 F.2d 172 (2nd Cir. 1975); *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Gwilliam v. United States,* 519 F.2d 407 (9th Cir. 1975); *In Re Dolard,* 519 F.2d 282 (9th Cir. 1975).

### SUPREMACY CLAUSE

The Bankruptcy Act of 1978 has its origin from an express grant of authority in the United States Constitution, Article I, § 8, clause 4 empowering Congress:

> "To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."

In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Supreme Court emphasized that courts of bankruptcy are vested with jurisdiction in law and in equity to implement the provisions of the Bankruptcy Act.

■ While the Court is persuaded that the Bankruptcy Code of 1978 does not annul a state's insolvency law,[12] the operative effects of such a state provision is suspended to the extent its enforcement would conflict with the Bankruptcy Code or with a Congressional policy. *See*: H.Rep.No.95–595, 317; 11 U.S.C. § 106; *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

In *Perez v. Campbell,* supra, the Supreme Court held an Arizona Motor Vehicle Safety Responsibility Act—which provided "discharge in bankruptcy following the rendering of any such judgment [as a result of an automobile accident] shall not relieve the judgment debtor from any of the requirements of this article"—unconstitutional and violative of the supremacy clause since the measure was in direct conflict with a provision of the Bankruptcy Act.

It is universally recognized that state legislation that frustrates the full implementation and effectiveness of federal law is invalidated by the Supremacy Clause of the Federal Constitution. *Perez v. Campbell,* supra; United States Constitution, Art. VI, cl. 2.

### OWNERSHIP OF THE GRAIN PRESENTS A FACTUAL ISSUE

■ In *Ex Parte In the Matter of Chicago, Rock Island & Pacific Railway Company, Petitioner,* 255 U.S. 273, 41 S.Ct. 288, 65 L.Ed. 631 (1921), the Supreme Court made the following pertinent expression:

> "There is a well-settled rule by which this court is guided upon applications for writ of prohibition to prevent a lower court from wrongfully assuming jurisdiction of a party, of a cause, or of some collateral matter arising therein. If the lower court is clearly without jurisdiction the writ will ordinarily be granted to one who at the outset objected to the jurisdiction, has preserved his rights by appropriate procedure and has no other remedy. . . . If, however, the jurisdiction of the lower court is doubtful, . . .; or if the jurisdiction depends upon a finding of fact made upon evidence which is not in

---

11. Petitioners or their representatives appeared in person, before the Bankruptcy Court, received copies of the orders entered by the court, but took no steps to appeal such orders or object to the jurisdiction of the court to enter such orders. Petitioners relinquished possession of debtors' warehouses, and the keys thereto, to the Trustee and agreed not to interfere with the Trustee's operation of debtors' businesses.

12. The Court is of the view that paragraph 6 of Missouri Warehouse Grain Act § 411.519 is in the nature of an insolvency measure. It is important to note that Petitioners based their state court proceeding on paragraph 6 in requesting the appointment of a receiver and injunctive relief against the Trustee and debtors.

the record, ...; or if the complaining party has an adequate remedy to appeal or otherwise, ...; the writ will ordinarily be denied...."

In *United States v. Boe*, 543 F.2d 151 (1976 Cust. & Pat.App.) the Court stressed that a party requesting writ of prohibition has the burden of showing a clear and indisputable right to relief and must demonstrate exceptional circumstances necessitating the relief sought.

Petitioners concede that the debtors own 2.3% of the grain in dispute. On the other hand, the Trustee contends that all of the grain constitutes an asset of the debtors' estate. Intervenors—45 Arkansas farmers—assert emphatically that a substantial portion of the grain, if not all, belongs to them.

The Trustee has filed a petition in the Bankruptcy Court for permission to sell the grain. The Court was advised during oral argument that both Arkansas and Missouri farmers have filed answers either acquiescing in the request or opposing it.

Surely, confronted with this posture of the proceedings, the Bankruptcy Court must determine ownership before affording any relief on the Trustee's application to sell the grain.

The Court is of the view that not only would it be improvident to issue a writ of prohibition in light of the existence of a fact question to be resolved, but, for the additional reason, the Petitioners are not without an adequate remedy in the event they should not prevail in the Bankruptcy Court. Petitioners' right to an appeal from a decision of the Bankruptcy Court is secured under the Bankruptcy Code.

█ The Court is persuaded that *Ex Parte In the Matter of Chicago, Rock Island & Pacific Railway Company, Petitioners*, supra, is applicable here.

### CONCLUSION

The Court is persuaded that Petitioners' request for writ of prohibition to the Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, and the Honorable Charles Baker, Bankruptcy Judge, should not be granted so far as Petitioners' request relates to the jurisdiction of the Bankruptcy Court to assume control over the grain located in debtors' warehouses; accordingly, said petition be, and it is hereby, dismissed in part; and,

The Court is of the opinion that Petitioners' petition appears to state a meritorious case regarding the proposed proceedings against Petitioners for purportedly disobeying orders of the Bankruptcy Court. Accordingly, the Honorable Charles Baker and the Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, are hereby ordered and directed to answer the petition, so far as said petition relates to the proposed contempt proceeding contemplated by the Bankruptcy Court, with brief in support thereof, within ten days of service of this order upon the Honorable Charles Baker.

IT IS FURTHER ordered that the Clerk of this Court be, and he is hereby, directed to serve a copy of this instrument upon the Honorable Charles Baker, Bankruptcy Judge, and Robert S. Lindsey, Trustee of debtors' estate.