WEICK, Circuit Judge.
The Industrial Commission of Ohio, Bureau of Workers’ Compensation, the State of Ohio and its officers have appealed directly to this court under 28 U.S.C. § 1293(b) (Supp.1981) from an order of the Bankruptcy Court for the Northern District of Ohio, Western Division, entered in Chapter Eleven proceedings, in which Mansfield Tire and Rubber Company (Mansfield) is the Debtor. The sole issue in the case, as stated in the order of the Bankruptcy Court from which the appeal is taken, was whether the actions of the Industrial Commission *1109 of Ohio in adjudicating the claims of Mansfield’s employees for workers’ compensation benefits pursuant to Chapters 4121 and 4123 of the Ohio Revised Code amount to enforcement of the police or regulatory powers of the State of Ohio. If the actions of the Industrial Commission in adjudicating such worker’s compensation claims for benefits did amount to enforcement of the police or regulatory powers of the State, then they are exempt from the automatic stay provisions of the Bankruptcy Act, 11 U.S.C. § 362. The appellants had filed an adversary complaint against the Debtor in the Bankruptcy Court seeking the order vacating the automatic stay asserting that the activities of the Industrial Commission in administering Ohio’s workers’ compensation laws were expressly excepted from the automatic stay by virtue of sections 362(b)(4) and 362(b)(5) of the Act because the stay would disrupt the administration of the law. The Bankruptcy Court was of the opinion that the activities of the Industrial Commission of Ohio in adjudicating workers’ compensation claims did not amount to enforcement of the police or regulatory powers of the State and hence were not excepted from the automatic stay under sections 362(b)(4) and 362(b)(5). The Bankruptcy Court declined to vacate the stay and dismissed appellants’ complaint. The result is that the Industrial Commission of Ohio has been enjoined from performing its statutory duties authorized by the Constitution of Ohio in processing the claims of Mansfield’s employees for workers’ compensation for personal injuries, death or occupational disease arising out of their employment by Mansfield. The injunction is in effect until further order or the termination of the proceeding which was commenced in 1979. Mansfield has not cited a single case where any bankruptcy court has ever entered such an order and we have found none. To say the least, Mansfield’s injured workers are not being treated fairly by Mansfield. We are of the opinion, for the reasons hereinafter set forth, that the order appealed from is erroneous and we reverse and vacate the stay.
I
Workers’ Compensation is mandated by the Ohio Constitution, as amended, Article II, Section 35 (1923)[1] and has been in effect since 1912. Ohio Revised Code, Chapters 4121 and 4123 were enacted by the Ohio *1110 legislature under the constitutional grant of authority. Participation in and compliance with the compensation program in Ohio is mandatory for all employers who employ more than one employee. Ohio Rev.Code § 4123.35.
Claims of workers for injury, occupational disease or death must be filed with and are determined by the Industrial Commission of Ohio which has exclusive jurisdiction subject only to appeal to the Common Pleas Court of Ohio and Ohio appellate courts. No other courts have jurisdiction, not even federal courts.
An Ohio employer may comply with the law in one of two ways. The employer may make payments into the State Insurance Fund in the amount of premium fixed by the Industrial Commission. Such employers are liable only for the payment of premiums and the State Insurance Fund is responsible for the payment of benefits. Claims for unpaid premiums against bankrupt employers are entitled to priority under section 64(a)(4) of the Bankruptcy Act of 1898. In re Pan American Paper Mills Inc., 618 F.2d 159 (1st Cir. 1980). Alternatively, the employer has the option to operate as a “self-insured” employer. The latter method is accomplished by meeting certain preliminary requirements not relevant here and by posting bonds or other securities with the Industrial Commission to secure the performance of its obligations as a self-insurer. In case of disagreement between a worker and a self-insurer over the validity of a claim, it is resolved by the Industrial Commission as the employer has no authority to reject claims.
Mansfield has been doing business in Ohio since 1912 and was amenable to the Worker’s Compensation Act of the State of Ohio. From July 1, 1958, until November 1, 1978, Mansfield operated as a self-insured employer under the Act. Although the briefs and the record on appeal are not as clear as they should be, it appears that for each of these years Mansfield arranged through bonding companies for the deposit of surety bonds with the Industrial Commission as security for the performance of its duties as required by law. In one year, Mansfield assigned a $100,000 United States Treasury Note due July 31, 1979, to the Industrial Commission absolutely. The rights and duties of the parties as regard that note were not before the Bankruptcy Court nor are they before this court.
On November 1, 1978, Mansfield elected to insure future workers’ compensation liability by paying into the State Insurance Fund the amount of premium as fixed by the Industrial Commission pursuant to Ohio Rev.Code § 4123.35. For those claims which arose prior to November 1, 1978, Mansfield continued to pay benefits directly to its employees.
On September 19, 1979, Mansfield ceased paying the pre-November 1, 1978, self-insured claims and thus became, as regards those claims, a “non-complying employer” under Ohio Rev.Code § 4123.75. As far as this court can determine from the briefs, record and oral argument, there are apparently about 400 worker claims by Mansfield employees which arose during the years 1958 to 1978. These claims are apparently in various stages of administration. Most, we assume, have been finally adjudicated and payments were being made to the workers by Mansfield. There may also be some claims which have not been finally adjudicated, such process having been automatically stayed by the Bankruptcy Court.
On October 1, 1979, Mansfield filed a petition under Chapter 11 of the Bankruptcy Act. With the filing of the petition, the automatic stay provisions of 11 U.S.C. § 362(a) went into effect, and by the terms of § 362(a)(1),[2] the appellants were auto *1111 matically stayed from administering Ohio’s workers’ compensation laws as they apply to Mansfield.
On November 13, 1979, the appellants filed an adversary complaint in the Bankruptcy Court requesting that the automatic stay be lifted inasmuch as appellants are exempted from the automatic stay provisions by the exceptions provided in 11 U.S.C. § 362(b)(4) and (5).[3]
By order of the Bankruptcy Court on December 7,1979, Mansfield was authorized to continue to fulfill its self-insured responsibilities for the years 1958 to 1978 and was ordered to continue making its premium payments to the Industrial Commission in accordance with its state-insured status. The interim order also permitted the Industrial Commission to continue to adjudicate the workers’ compensation claims of Mansfield employees in accordance with Chapters 4121 and 4123 of the Ohio Revised Code. This was an interim order governing the conduct of the parties until a final decision on appellants’ adversary complaint was rendered. The operations of Mansfield and the Industrial Commission under the interim order have not been shown to have any detrimental effect on the Chapter Eleven proceedings or the other creditors of Mansfield and in our opinion should have been continued until the estate is closed.
By an Opinion and Order of January 13, 1981, the Bankruptcy Court ruled that the exceptions contained in 11 U.S.C. § 362(b)(4) and (5) did not apply to the appellants and dismissed their complaint. In our opinion, this was error and we reverse and vacate the automatic stay.
II
As a result of the parties’ failure to crystalize the facts and issues before this court, we must first dispose of one area of potential dispute, to wit, the status of those workers’ compensation claims which may have arisen or were filed following the filing of the bankruptcy petition on October 1, 1979. These claims were not addressed in the briefs, and at oral argument the panel was presented with contradictory statements of counsel. It is not clear to this court that such claims even exist particularly with respect to factory workers since it has come to the court’s attention that Mansfield ceased its manufacturing operations in Ohio on or about August 25, 1978, a fact which was not disclosed to us by counsel.[4] The parties did agree on one fact: that Mansfield has continued to make its premium payments. On appeal, however, Mansfield did contest the right of the Industrial Commission to process these claims. In response to this contention and the very broad language of the Bankruptcy Court’s opinion we note that the automatic stay provisions of § 362(a), by their terms, apply only to those actions which were or could have been commenced prior to the filing of the bankruptcy petition. Thus, if there are any claims which were not and could not have been filed before October 1, 1979, then they are not subject to the automatic stay provisions of 11 U.S.C. § 362(a). What remains for our consideration then are the some 400 claims which arose during Mansfield’s self-insured period and any claims which arose and were or could have been commenced after Mansfield ended its self-insured period and before it filed its petition on October 1, 1979.
*1112 III
With an eye towards two goals, the protection of the debtor in possession and the protection of creditors,[5] Congress enacted 11 U.S.C. § 362. Section 362(a)(1) provides as follows:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303] operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title [11 USCS §§ 1 et seq.], or to recover a claim against the debtor that arose before the commencement of the case under this title [11 USCS §§ 1 et seq.]
Appellants concede that their activities in administering Ohio’s workers’ compensation laws are automatically stayed by this section. They argue, however, that they are excepted from the automatic stay by virtue of sections 362(b)(4) and 362(b)(5) which expressly provide as follows:
(b) The filing of a petition under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303] does not operate as a stay—
(4) under section (b)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.
The legislative history of these provisions is relatively clear. The House Report explained as follows: Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.
House Report No. 95-595, 95th Cong., 2d Sess. at 343, reprinted in 1978 U.S.Code Cong., and Adm.News, 5787, 6299. See also Senate Report No. 95-989, 95th Cong., 2d Sess. p. 52, reprinted in 1978 U.S.Code Cong, and Adm.News, 5787, 5888.
The issue of whether the administration of a state’s workers’ compensation law falls within the exception set out above appears to be one of first impression under the Bankruptcy Act of 1978. The Bankruptcy Court in denying the petition requesting relief from the automatic stay relied on the legislative history as set out above, the isolated remarks of a congressman and a senator during floor debates on the bill, and the case of In the Matter of Canarico Quarries, 466 F.Supp. 1333 (D.P.R.1979). Canarico was a case arising under the Bankruptcy Act of 1898 and involved the application of certain rules of the Federal Clean Air Act. There, the court looked to the 1978 Act for guidance and cited with approval those pro *1113 visions of the legislative history which commented that no stay should operate to prevent a governmental unit from stopping a violation involving fraud, environmental protection, consumer protection, safety or similar police or regulatory laws.
The Bankruptcy Court reasoned as follows:
Efforts by the State of the type approved in Canarico are demonstrably a function of police or regulatory laws. It is not clear to me, and hence I decline to so find, that in processing workers’ compensation claims, the State, through its responsible agencies, is carrying out activities of a nature equivalent to fraud prevention or environmental or consumer protection or safety.
Plaintiffs have amply shown, through the citation of authorities that the enactment of the workers’ compensation law in force in this State was a valid exercise of the police powers of the State. The question remains as to whether administration of claims under that law is but an extension of that power. None of the cases examined so hold.
This court .can find no basis of any distinction between the enactment of workers’ compensation laws as a valid exercise of a state’s police or regulatory power on the one hand, and the administration of claims arising under such laws as not being an exercise or extension of that power on the other.
In New York Central R. R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917), the Supreme Court held that worker’s compensation legislation “. . . cannot be supported except on the ground that it is a reasonable exercise of the police power of the State. In our opinion, it is fairly supportable upon that ground.” 243 U.S. at 206, 37 S.Ct. at 254. See also Jeffrey Manufacturing Co. v. Blagg, 235 U.S. 571, 35 S.Ct. 167, 59 L.Ed. 364 (1914) affirming 90 Ohio St. 376, 108 N.E. 465, and Yaple v. Creamer, 85 Ohio St. 349, 97 N.E. 602 (1912).
The Bankruptcy Court held that the workers’ compensation law of Ohio was a valid exercise of the police powers of the state but that the Commission’s activities in processing claims were not of a nature equivalent to prevention of fraud or environmental or consumer protection or safety. In our opinion, although not identical, they are either equivalent or just as appropriate and the latter are an exercise or extension of the police powers. The automatic stay prevents the exercise by the Industrial Commission of its lawful powers and operates to hinder, delay and deprive Mansfield’s injured workers of the benefits to which they are lawfully entitled and it affects their safety.
The exercise by the Commission of its lawful powers on the other hand gives it no preference over the creditors of the debtor and injures them in no respect, as it does not interfere with the property of the debtor’s estate. The insurance fund, not the debtor’s estate, pays the claims for which the employer has paid the premium. Therefore, as to claims arising out of the former self-insured status of Mansfield, which it abandoned, the claimants can collect from the Commission which can then resort to the surety bonds pledged as security. These bonds are the property of the Commission and are not assets of the debt- or’s estate. As an appellate court, in diversity cases, we exercise appellate jurisdiction, but we do not hear appeals in worker’s compensation claims except in appeals from district courts in Tennessee, where jurisdiction is expressly provided by Tennessee legislation. No such jurisdiction has been provided for Bankruptcy Courts and we are not aware that any Bankruptcy Court in all the long years of existence of the old Bankruptcy Act of 1898 attempted to exercise jurisdiction over the administration of workers’ compensation laws. The purpose of Chapter Eleven proceedings is to give the debtor a breathing spell so that it can adjust and compromise its debts. It is submitted that Congress, in enacting Chapter Eleven, never intended that the proceedings be used to disrupt the orderly administration of the worker’s compensation laws by the state. Furthermore, in diversity cases, federal courts even decline to exercise jurisdiction in the field of domestic relations and *1114 administration of trusts and estates peculiarly suited to state regulatory control and. unsuited to control by federal courts. Firestone v. Cleveland Trust Company, 654 F.2d 1212 (6th Cir. 1981). It is clear to us that the Bankruptcy Court has no jurisdiction to pass upon the validity of workers’ claims for injury, occupational disease, or death as the exclusive jurisdiction is vested in the Industrial Commission and the Ohio courts.
Several cases have been recently decided by other courts which bear on the proper construction • which is to be given to the exception contained in 11 U.S.C. § 362(b)(4). In Marshall v. Tauscher, (In re Tauscher), 7 B.R. 918 (Bkrtcy.E.D.Wis.1981), the Secretary of Labor had been stayed by § 362(a)(1). In an action seeking relief from the stay, the bankruptcy court held that civil money penalties for child labor violations under the Fair Labor Standards Act were not dischargeable under the bankruptcy code and that the assessment of these penalties against the debtor were excepted from the automatic stay by § 362(b)(4) as a valid exercise of governmental police or regulatory power. The court found, however, that the exception did not extend to the enforcement of the penalty against the estate of the debtor.
In NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir. 1981), the court was presented with an issue of first impression under the new Bankruptcy Act: whether the automatic stay provision applies to an enforcement proceeding by the NLRB. The court found that the enforcement proceeding by the NLRB fell squarely within § 362(b)(4).[6] The court added, however, that its decision permitted the entry for injunctive relief and back pay, but that the actual enforcement of the back pay money judgment would be a “different question” not presented for review.
Two other cases offer guidance in the instant case by delineating certain matters which were found not to be within the scope of a governmental unit’s police or regulatory power. In re State of Missouri, 7 B.R. 974 (E.D.Ark.1980) held that the claim against a bankrupt estate by a state appointed receiver was not an attempt to exercise the police or regulatory power of the state, and in Gibbs v. Housing Authority of New Haven (In the Matter of Gibbs ), 9 B.R. 758 (Bkrtcy.D.Conn.1981), the court held that the Housing Authority was not enforcing a police or regulatory power when it sought to evict a tenant pursuant to a judgment for possession based on the non-payment of rent and that even if it was a regulatory power, it would be stayed by 11 U.S.C. § 362(a)(3).[7]
In view of the guidelines provided by these cases and the language and legislative history of the Bankruptcy Act, we find that the administration of workers’ compensation claims by the State of Ohio and the agencies created for that purpose is a valid exercise of the police or regulatory power of a governmental unit. The activity thus falls within the exception of 11 U.S.C. § 362(b)(4) and the Bankruptcy Court erred in refusing to vacate the automatic stay of § 362(a)(1).
IV
As the decisions discussed above have noted, our holding does not carry the effect of actually allowing a claim of the industrial Commission against the estate of the debtor. This is a matter which would have to be handled in the Bankruptcy Court *1115 when it is filed there, along with the other claims against the estate. Our decision allows the State of Ohio, the Industrial Commission, and the Bureau of Workers’ Compensation to proceed forthwith in the administration of workers’ compensation claims brought by employees of Mansfield Tire & Rubber Company.
Under the Ohio Workers’ Compensation laws, if a “self-insured” employer in Ohio does not make payments to an injured employee who is entitled to benefits, the provisions of Ohio Rev. Code § 4123.75 take effect. Upon determination that an injured employee of a “self-insured” employer is entitled to benefits, an order is issued by the Industrial Commission to the employer to make payment. If the employer fails to pay, a hearing is held to determine whether the “self-insured” employer is in “non-compliance” with the law. Such a finding by the Industrial Commission is a prerequisite to triggering the liability of the surety on the bond posted to insure compliance by the “self-insured” employer. If the “self-insured” employer is found to be in “non-compliance,” payment is made by the Industrial Commission from the State Insurance Fund. In any case, the Industrial Commission is liable to the injured employee for his benefits. Thus the Industrial Commission stands in the position of codebtor with the “self-insured” employer for the claim of the injured employee. Likewise, the surety stands as a codebtor with the “self-insured” employer to the claim of Industrial Commission for the amount of benefits provided to the employee from the State Insurance Fund.
The final “claim” by the Industrial Commission against Mansfield for the amount of benefits provided to the workers from the State Insurance Fund is not covered by this opinion. Satisfaction of that claim against the estate is a separate matter to be taken up before the Bankruptcy Court after such a claim has been filed.[8]
Paying the claims out of either the Insurance Fund or the posted surety bonds does not result in the enforcement of a money judgment against the debtor or its estate. Mansfield does not, and could not, claim any interest, legal or equitable, in those surety bonds.[9] The continuing administration of the workers’ compensation claims will, therefore, have absolutely no effect on the estate of the debtor.[10]
Accordingly, the judgment of the Bankruptcy Court is reversed and the automatic stay is vacated.
APPENDIX
MANSFIELD TIRE PLANS SALE OF MISSISSIPPI PLANT TO GROUND MOBILITY
By a WALL STREET JOURNAL

Staff Reporter

MANSFIELD, Ohio — Mansfield Tire & Rubber Co., which is operating under Chapter 11 of the federal Bankruptcy Act, said it agreed to sell its closed Tupelo, Miss., tire plant to Ground Mobility Automotive Inc. for cash and assumption of industrial revenue-bond obligations.
Under Chapter 11, a company continues to operate, but has court protection against *1116 creditors’ lawsuits while it tries to work out a plan for paying its debts.
Under the agreement’s terms, Mansfield’s Pennsylvania Tire & Rubber Co. of Mississippi subsidiary will assign its leases that cover the Tupelo plant and certain equipment and will sell some land and equipment outright, according to an attorney for Cleveland-based Baker & Hostetler, Mansfield Tire’s outside legal counsel.
In return, Ground Mobility will pay $2.5 million, part of which will go to Mansfield Tire for tire molds and other equipment and the balance of which will go to Pennsylvania Tire, the attorney said.
The amounts Mansfield and Pennsylvania Tire will receive haven’t been established but will be determined during future proceedings in bankruptcy court, the attorney added.
In addition, Ground Mobility will assume Pennsylvania Tire’s obligations covering industrial revenue bonds that were issued to finance the Tupelo plant, Mansfield said. Ground Mobility will pay about $4 million of accrued interest and principal currently outstanding on the bonds to bring the bonds out of default and will be responsible for future payments, the attorney said. The bonds were issued by the city of Tupelo and by the supervisors’ Districts 3 and 4 of Lee County, Miss., the attorney said.
The Tupelo plant was the last tire plant Mansfield Tire ran before pulling out of the tire business in the fall of 1979. The plant, which employed about 700 workers and made radial and bias-ply tires, accounted for 85% of the company’s 1978 sales of $77 million. The plant also was unprofitable.
Ground Mobility is a newly formed company that plans to produce passenger tires at the Tupelo plant, says Owen P. Lalor, an attorney with Watkins, Ludlam and Stennis, the company’s outside counsel based in Jackson, Miss.
The main principal at Ground Mobility is E. Eugene McMannis, a man who Mr. Lalor says “has been in the tire business more than 20 years.” However, Mr. Lalor wouldn’t disclose any details of Mr. McMannis’s tire industry background. Mr. Lalor also wouldn’t say how Ground Mobility expects to succeed where Mansfield Tire failed in operating the Tupelo plant.

. Ohio Const., art. II, § 35 (as amended 1923, effective in 1924) provides, in pertinent part:
Workers’ compensation.
For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such worker’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto....
Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employe[e]s, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards; and, if such compensation is paid from the state fund, the premium of such employer shall be increased in such amount, covering such period of time as may be fixed, as will recoup the state fund in the amount of such additional award, notwithstanding any and all other provisions in this constitution.

. 11 U.S.C. § 362(a) provides, in pertinent part: Automatic Stay
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement against the debtor or against property of the estate, of a judgment *1111 obtained before the commencement of the case under this title;
(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title;

. These subsections provide as follows:
(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;

. Clipping from the Wall Street Journal July 9, 1981, is appended.

. See, House Report No. 95-595, 95th Cong., 2d Sess. at 340, reprinted in 1978 U.S. Code Cong, and Adm. News, 5787, 6296. See also, Senate Report No. 95-989, 95th Cong., 2d Sess. p. 49, reprinted in 1978 U.S. Code Cong, and Adm. News, 5787, 5835.

. The Fifth Circuit found some support, as do we, in two cases which were decided under the old Bankruptcy Act: In re Bel Air Chateau Hospital, Inc., 611 F.2d 1248 (9th Cir. 1979) and In the Matter of Shippers Interstate Service, Inc., 618 F.2d 9 (7th Cir. 1980). These cases held that the automatic stay provisions of the Bankruptcy Act of 1898 did not operate to stay unfair labor practice proceedings before the NLRB and that this view was harmonious with the automatic stay provisions and exceptions contained in 11 U.S.C. § 362(a) and (b).

. 11 U.S.C. § 362(a)(3) provides:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(3) any act to obtain possession of property of the estate or of property from the estate;

. The actual enforcement and satisfaction of a money judgment against the debtor or the estate would be stayed, directly by 11 U.S.C. § 362(a)(6), supra, note 3, and impliedly by virtue of 11 U.S.C. § 362(b)(5), supra, note 4.

. Excepting, as noted above, the $100,000 United States Treasury Note which was not dealt with by the Bankruptcy Court.

. This comports with the congressional intent evidenced in 11 U.S.C. § 362(d) which provides as follows:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor does not have equity in such property; and
(B) such property is not necessary to an effective reorganization.